UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
LUCAS CRUZ,                                            :
                                                       :
                       Plaintiff,                      :
                                                       :
       -against-                                       :         **COMPLAINT**
                                                       :
HARLEM GROUP DR CORP. d/b/a BRONX                      :
DRAFTHOUSE, ALFREDO ANGUERA JR., and                   :
RAMON MARTINEZ,                                        :
                                                       :
                       Defendants.                     :
------------------------------------------------------------------- X

Plaintiff Lucas Cruz ("Plaintiff" or "Cruz"), on behalf of himself, by his attorneys Pechman Law Group PLLC, complaining of Defendants Harlem Group Dr Corp. d/b/a Bronx Drafthouse, Alfredo Anguera Jr., and Ramon Martinez (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

1. Lucas Cruz worked as a dishwasher and cook at Bronx Drafthouse. Although Cruz regularly worked more than 40 hours in a workweek, at times up to 86 hours in a week, Defendants paid Cruz at the same sub-minimum hourly wage rate per hour worked. In addition to failing to pay Cruz minimum and overtime pay as required under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), Defendants also failed to furnish Cruz with a wage notice and accurate weekly wage statements, as required by the New York Wage Theft Prevention Act ("WTPA").

2. Cruz seeks compensation for unpaid minimum and overtime wages, unpaid spread-of-hours pay, statutory damages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and NYLL.

## JURISDICTION

3. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth to this Complaint occurred at Bronx Drafthouse, which is located and operated in the Southern District of New York.

## THE PARTIES

**Plaintiff Lucas Cruz**

5. Cruz resides in the Bronx, New York.

6. Defendants employed Cruz as a dishwasher from approximately May 29, 2017 to September 22, 2019.

7. In addition to his shifts as a dishwasher, from in or about August 12, 2019 until approximately September 22, 2019, Defendants employed Cruz as a cook.

8. Throughout his employment, Cruz was an employee engaged in commerce or in the production of goods for interstate commerce.

**Defendant Harlem Group Dr Corp. d/b/a Bronx Drafthouse**

9. Defendant Harlem Group Dr Corp. is a New York corporation that owns, operates, and does business as Bronx Drafthouse, a sports bar and restaurant located at 884 Gerard Avenue, Bronx, New York 10452.

10. Harlem Group Dr Corp. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

11. Since in or about May 2017, Harlem Group Dr Corp. has employed more than eleven employees per year.

12. Within the three years prior to the filing of this Complaint, Harlem Group Dr Corp. had an annual gross volume of sales in excess of $500,000.

13. Harlem Group Dr Corp. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant Alfredo Anguera Jr.**

14. Defendant Alfredo Anguera Jr. ("Anguera") is an owner of Bronx Drafthouse.

15. Throughout Cruz's employment, Anguera oversaw the day-to-day operations of Bronx Drafthouse and was regularly present in the restaurant.

16. During Cruz's employment, Anguera interviewed, hired, and fired employees.

17. For example, in or about summer 2018, Cruz witnessed Anguera firing a bartender.

18. During this period, Anguera personally directed the manner in which employees, such as Cruz, performed their daily duties and assignments.

19. For example, whenever it snowed, Anguera instructed Cruz to go outside to shovel snow.

20. Along with Defendant Ramon Martinez, Anguera determined Cruz's wages and periodic raises.

21. Whenever Cruz asked the manager for a raise, the manager would say he had to discuss it with Anguera and Ramon Martinez first.

22. Anguera exercised sufficient control over the operations of Bronx Drafthouse to be considered Cruz's employer under the FLSA and NYLL.

**Defendant Ramon Martinez**

23. Defendant Ramon Martinez ("Martinez") is an owner of Bronx Drafthouse.

24. Throughout Cruz's employment, Martinez oversaw the day-to-day operations of Bronx Drafthouse and was regularly present in the restaurant.

25. During Cruz's employment, Martinez interviewed, hired, and fired employees.

26. For example, in or about spring 2018, Cruz witnessed Martinez firing a bartender.

27. During this period, Martinez personally directed the manner in which employees, such as Cruz, performed their daily duties and assignments.

28. For example, during baseball season, Martinez directed Cruz to check bathrooms to make sure they were clean.

29. Martinez exercised sufficient control over the operations of Bronx Drafthouse to be considered Cruz's employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

30. Bronx Drafthouse is open to the public Sunday through Thursday from 11:30 a.m. until 2:00 a.m. and Friday and Saturday from 11:30 a.m. until 4:00 a.m.

31. Throughout his employment as a dishwasher, Cruz's work hours varied depending on whether there was a baseball or soccer game at Yankee Stadium, with seasons spanning from approximately February through October each year.

32. During soccer and baseball seasons, from approximately February through October each year, Cruz typically worked five to seven days per workweek. He worked double shifts approximately three times per workweek, for approximately 14 to 16 hours per workday, and single shifts spanning approximately 7 to 9.5 hours the rest of the week.

33. During soccer and baseball seasons, Cruz's hours ranged from 28.5 to 91.5 hours per workweek.

34. For example, on the week of June 3 to June 9, 2019, Cruz worked seven days (11.85, 15, 14.35, 14.95, 9.75, 8.4, and 7.65 hours per day), for a total of 81.95 hours.

35. During the off season, from approximately November through January each year, Cruz regularly worked five to seven days per week, for approximately 7 to 10.5 hours per workday, for an approximate total of 35 to 67 hours per workweek.

36. During the off season, Cruz's hours ranged from 37.4 to 67 hours per workweek.

37. For example, on the week of December 17 to December 23, 2018, Cruz worked five days (8.2, 10.15, 8.05, 8.45, and 9.7 hours per day), for a total of 44.55 hours.

38. As a cook and a dishwasher in August and September 2019, Cruz worked 7 days per week for approximately 7 to 16 hours per day, or a total of 49 to up to 80 hours per workweek.

39. From approximately May 2017 until March 2018, Defendants paid Cruz $10.00 per hour, including hours worked over forty per workweek.

40. From approximately March 2018 until March 2019, Defendants paid Cruz $12.00 per hour, including hours worked over forty per workweek.

41. From approximately March 2019 until August 2019, Defendants paid Cruz $14.00 per hour, including hours worked over forty per workweek.

42. From approximately August 2019 through September 2019, Defendants paid Cruz $14.00 per hour for hours worked as a dishwasher and $16.00 per hour for hours worked as a cook, regardless of how many hours he worked in a workweek.

43. Throughout his employment, Cruz frequently worked shifts that spanned more than ten hours.

5

44. Defendants did not compensate Cruz with spread-of-hours pay, one extra hour of pay at the statutory minimum hourly wage rate, for each day his shift exceeded ten hours.

45. Defendants did not furnish Cruz with a wage notice at the time of hire or when his hourly wage rate changed.

46. From the beginning of his employment until in or about November 2018, Defendants paid Cruz his weekly wages in cash without a corresponding wage statement that, *inter alia*, reflected his rate of pay and number of hours worked.

47. From approximately November 2018 until the end of his employment, Cruz received wage statements that reflected no rate of pay, an inaccurate rate of pay, and/or failed to reflect all of his hours worked.

## FIRST CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

48. Plaintiff repeats and realleges all forgoing paragraphs as if set forth herein.

49. The NYLL requires that employers pay employees a minimum wage for the first forty hours worked in a workweek.

50. Defendants are employers within the meaning of the NYLL §§ 190 *et seq.*, 651(5), and 652, and supporting New York State Department of Labor ("NYDOL") Regulations and employed Plaintiff.

51. The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor regulations apply to Defendants.

52. The minimum wage rates for large employers in New York City, such as Defendants, were $11 per hour in 2017, $13 per hour in 2018, and $15 per hour in 2019.

53. Defendants failed to pay Plaintiff the minimum wages to which Plaintiff was entitled under the NYLL.

54. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum hourly wages.

55. As a result of Defendants' willful violations of the NYLL, Plaintiff has suffered damages by being denied minimum wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs of this action.

## SECOND CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

56. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

57. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiff.

58. Plaintiff was an employee within the meaning of the FLSA.

59. Defendants were required to pay Plaintiff one and one-half (1½) times his regular hourly rate, which could not be lower than the applicable minimum wage rate, for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

60. Plaintiff regularly worked over forty hours per workweek.

61. Defendants paid Plaintiff at the same hourly wage rate per hour worked, including overtime hours worked.

62. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

63. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

64. Due to Defendants' violations of the FLSA, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### THIRD CLAIM
### (New York Labor Law – Unpaid Overtime)

65. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

66. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting NYDOL Regulations and employed Plaintiff.

67. Under the NYLL and supporting New York State Department of Labor regulations, Defendants were required to pay Plaintiff one and one-half (1½) times his regular hourly wage rate, which could not be lower than the applicable minimum wage rate, for all hours worked in excess of forty per workweek.

68. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

69. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

70. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### FOURTH CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

71. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

72. Defendants willfully failed to pay Plaintiff additional compensation of one hour's pay at the basic minimum hourly wage rate for each workday during which his shift spanned more than ten hours.

73. By Defendants' failure to pay Plaintiff spread-of-hours pay, Defendants willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting NYDOL Regulations, including, but not limited to, 12 N.Y.C.R.R. § 146-1.6.

74. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

## FIFTH CLAIM
**(New York Labor Law – Failure to Provide Wage Notices)**

75. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

76. Defendants failed to furnish Plaintiff with a notice at the time of hire and whenever his rate of pay changed, containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; and anything otherwise required by law in violation of NYLL § 195(1).

77. Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages of $50.00 per workday that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees and costs, and disbursements of the action, pursuant to NYLL § 198(1-b).

## SIXTH CLAIM
### (New York Labor Law – Failure to Provide Accurate Wage Statements)

78. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

79. Defendants failed to furnish Plaintiff with each wage payment, a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

80. Due to Defendants' violation of the NYLL, § 195(3), Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    a. declaring that Defendants violated the minimum wage provisions of the NYLL and NYDOL Regulations;

    b. declaring that Defendants violated the overtime wage provisions of the FLSA, the NYLL, and NYDOL Regulations;

    c. declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL and the NYDOL Regulations;

    d. declaring that Defendants violated the wage notice and wage statement provisions of the NYLL and WTPA;

   e. declaring that Defendants' violations of the FLSA and NYLL were willful;

   f. enjoining future violations of the FLSA and NYLL by Defendants;

   g. awarding Plaintiff damages for unpaid minimum wages;

   h. awarding Plaintiff damages for unpaid overtime wages;

   i. awarding Plaintiff damages for unpaid spread-of-hours pay;

   j. awarding Plaintiff liquidated damages pursuant to the FLSA and NYLL in an amount equal to the total amount of the wages found to be due;

   k. awarding Plaintiff statutory damages as a result of Defendants' failure to furnish wage notices and failure to provide accurate wage statements with each payment of wages pursuant to the NYLL;

   l. awarding Plaintiff pre- and post-judgment interest under NYLL and 28 U.S.C. § 1961;

   m. awarding Plaintiff reasonable attorneys' fees and costs pursuant the FLSA and the NYLL; and

   n. awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
    July 23, 2020

            PECHMAN LAW GROUP PLLC

            By: *s/ Louis Pechman*
               Louis Pechman
               Catalina Cadavid
               488 Madison Avenue, 17th Floor
               New York, New York 10022
               Tel.: (212) 583-9500
               pechman@pechmanlaw.com
               cadavid@pechmanlaw.com
               *Attorneys for Plaintiff*